LEE A. BINDSEIL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bindseil v. Commissioner
Docket No. 31583-81.
United States Tax Court
T.C. Memo 1983-411; 1983 Tax Ct. Memo LEXIS 376; 46 T.C.M. (CCH) 764; T.C.M. (RIA) 83411; July 18, 1983. Lee A. Bindseil, pro se. Elizabeth S. Henn, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent determined a deficiency of $1,567.31 in petitioner's income tax for the taxable year 1979. The issues presented for our decision are: (1) whether petitioner rented a house to his parents at a fair rental for purposes of section 280A(d)(3) [1] and, if so, (2) whether in renting the house to his parents petitioner was engaged in an activity for profit within the intendment of section 183. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Lee A. Bindseil (hereinafter Lee) resided in Linthicum, Maryland, *379 when the petition in this case was filed. In 1979, Lee purchased, for $60,000 a house located at 543 Shipley Road, Linthicum, Maryland (hereinafter the Shipley house). The house is a one-story frame house with three bedrooms, one bathroom, a living-dining room, a kitchen, a basement, and a detached garage. The house is built upon a lot measuring approximately 80 feet by 150 feet. Lee rented the Shipley house to his parents for nine months in 1979, beginning in April, at a rent of $250 per month, not including utilities. During 1979, Lee incurred expenses attributable to the Shipley house as follows: interest, $2,080.91; insurance, $222; taxes, $415.37; and repairs, $1,927.07, for a total of $4,645.35. The repair expenses included $215.42 for miscellaneous repairs and maintenance; $640 for sewer repairs; $145.65 for plumbing repairs, and $926 paid to a contractor for an unspecified repair. Lee also claimed depreciation in the amount of $1,413. During 1979, Lee's parents expended approximately $200 for materials used to repair the garage roof. Lee's parents have rented the Shipley house from 1979 until the date of the trial of this case. They paid $250 a month rent throughout *380 1979 and 1980. In 1981, Lee raised the rent to $350 a month. In 1980 and 1981, Lee's parents expended, in addition to their rental payments, at least $2,175 for repairs and capital improvements to the Shipley house. When Lee first agreed to rent the Shipley house to his parents, he believed that they would take very good care of the house, and would make improvements to it. Prior to renting the Shipley house to his parents, Lee neither put the house on the public market for rental, nor consulted a realtor concerning the fair rental value of the house. OPINION Issue 1. Section 280A
Section 280A was enacted in response to the concern that rental of property used as a residence by the taxpayer or members of the taxpayer's family "afforded the taxpayer unwarranted opportunities to obtain deductions for expenses of a personal nature." , [2] affd. . Section 280A(a) states the general rule that no deduction is allowable with respect to the use of a dwelling unit which is used as a residence by *381 a taxpayer during the taxable year. An exception is provided in section 280A(b) for deductions, such as interest and taxes, which are allowable to a taxpayer without regard to their connection with his trade or business. Under section 280A(d)(1), a taxpayer is considered to have used a dwelling unit as a residence during the taxable year if he uses the unit for personal purposes for a specified period. Section 280A(d)(2)(A) provides that a taxpayer shall be deemed to have used a dwelling unit for personal purposes on any day that the unit is so used by a member of the taxpayer's family, as defined in section 267(c)(4). Section 267(c)(4) provides that: "The family of an individual shall include * * * his * * * ancestors." Lee's parents, his ancestors, are thus family members within the intendment of section 267(c)(4). Section 280A as originally enacted resulted in the denial of deductions for expenses of renting a residence to a relative even when a fair rental was charged. H. Rept. No. 97-404, 8 (1981). On December 29, 1981, Congress amended Section 280A by adding a new paragraph (3) to section 280A(d). Pub. L. No. 97-119, 95 Stat. 1641. The new paragraph provides in pertinent *382 part: (3) RENTAL TO FAMILY MEMBER, ETC., FOR USE AS PRINCIPAL RESIDENCE.-- (A) IN GENERAL.--A taxpayer shall not be treated as using a dwelling unit for personal purposes by reason of a rental arrangement for any period if for such period such dwelling unit is rented, at a fair rental, to any person for use as such person's principal residence. This amendment applies to taxable years beginning after December 31, 1975, except that for those years beginning before January 1, 1980, it applies only to years for which a refund or assessment of deficiency was not barred by law on December 29, 1981. Since we are in the process of determining whether there is a deficiency, the amendment is applicable in this case. Sections 6213 and 6214. Section 280A(d)(3)(A) provides no definition of "fair rental," but the legislative history of section 280A(d)(3)(A) states that "[t]he committee intends that fair rental be determined by taking into account such factors as: (1) comparable rentals in the area; and (2) whether substantial gifts were made by the taxpayer to the family member at or about the time of the lease or periodically during the year." H. Rept. No. 97-404, 8-9 (1981). Lee *383 asserts, and respondent denies, that the Shipley house was rented to Lee's parents in 1979 at a fair rental. Lee bears the burden of proving that his parents paid fair rental for the house. Rule 142(a). Lee did not introduce expert testimony on the 1979 fair rental of the Shipley house. Since we do not accord much weight to Lee's self-serving testimony concerning the fair rental value of the Shipley house, his only hope of meeting his burden of proof lies in his attempt to turn to his own use respondent's expert witness. Respondent's expert witness, Leonard Lyons, Jr., formed his opinion of the fair rental value of the Shipley house by examining three comparables located within seven blocks of it. He examined only the exteriors of the Shipley house and of the three comparables. The first comparable was a brick Cape Cod type house with three bedrooms, one bath, and unimproved basement, and a one-car garage. Mr. Lyons considered this property, which rented for $500 per month, to be slightly superior in rental value to the Shipley property. The second comparable was a frame split-foyer style house with three bedrooms, two baths, a half finished lower level, but lacking a garage. *384 Mr. Lyons considered this property, which rented for $450 per month, to be closest to the Shipley house in rental value. The third comparable was an older one and one-half story house with three bedrooms, one and one-half baths, and an unimproved basement, but lacking a garage. This property, which rented for 420 a month, Mr. Lyons considered to be inferior in rental value to the Shipley property. In arriving at the abovementioned rental values, Mr. Lyons reduced the actual rentals of the comparables by five percent to reflect the fact that those rentals were fixed 12 to 18 months after the time as of which we must value the fair rental of the Shipley house. Mr. Lyons concluded that the 1979 fair rental of the Shipley house was $450 a month. On his cross-examination of Mr. Lyons, Lee elicited the admission that the market rental value of a house might be lowered by 10 or, at most, 20 percent in the case of tenants who were expected to take unusually good care of the rented property. Mr. Lyons also admitted that had Lee negotiated a management agreement for the Shipley house with a realtor, he would have had to pay a commission of five to ten percent. Lee argues that we *385 must discount the valuation of respondent's expert by 30 percent, to reflect the facts that Lee expected his parents to take unusually good care of the Shipley house, and that renting to his parents enabled him to avoid incurring a management fee. Based on our evaluation of the report and testimony of respondent's expert, we find that the 1979 fair rental at which the Shipley property could have been rented to a stranger was $450 a month. We further find that this figure must be discounted 20 percent to reflect the gain Lee realized by avoiding a management fee and renting to trustworthy tenants, [3] giving a 1979 fair rental of $360 a month. Lee rented the Shipley house to his parents in 1979 for $250 a month, with the understanding that they would make repairs and capital improvements to the house. Lee's parents expended $200 on the house in 1979 and at least $2,175 in the succeeding two years. Lee argues that the value in 1979 of his understanding that his parents would make improvements to the house, as established by their subsequent expenditures on the house, together with the $250 a month rent *386 paid in 1979 and the $200 his parents expended on repairs in 1979, represent a fair rental for the Shipley house. Lee's only testimony on the nature of his understanding that his parents would make improvements to the Shipley house was that "[a]lso, knowing my parents, I knew that improvements would be made to the house and the property * * * to make the house more liverable." Lee's confidence in his parents turned out to be well founded, but this is not evidence that there was an enforceable agreement between Lee and his parents in 1979, since Lee did not allege that his parents ever promised to make improvements to the house. The record contains no evidence on the nature of the tenancy held by Lee's parents and in the absence of any evidence to the contrary, the burden of proof being on Lee, we must assume that Lee's parents occupied the Shipley house on a month-to-month tenancy terminable by either party on one month's notice. On the record before us, we are convinced that had either Lee or his parents terminated their rental arrangement at the end of 1979, Lee would have had no cause of action against his parents for their failure to make improvements to the property. *387 We are therefore unable to assign any value to Lee's understanding in 1979 that his parents would at some future date make improvements to the Shipley house. Based on the foregoing considerations, and the entire record, we find and hold that Lee has failed to carry his burden of proving that he received a fair rental for the Shipley house in 1979. [4] It thus becomes unnecessary for us to consider section 183. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. .↩
3. See .↩
4. Lee received from his parents in 1979 $250 a month rent for nine months, plus $200 they expended on the house, for a total of $2,450, or $272 a month. The fair rental value of the house was $360 a month.↩